IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN E. MILLER, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 08-CV-271 (JCJ) |
| COMM'R STANLEY TAYLOR, et al., | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                               **March 15, 2011**

Before this Court are Defendants' Motion for Summary Judgment (D.I. 120), Plaintiff's response in opposition thereto (D.I. 138), and Defendants' reply in further support thereof (D.I. 150). For the reasons set forth in this Memorandum, the Court denies the Motion without prejudice and will schedule an evidentiary hearing to resolve the genuine dispute over exhaustion of administrative remedies.

**I. BACKGROUND**

The procedural history of this § 1983 prison-conditions suit brought by pro se Plaintiff John Miller, an inmate at the James T. Vaughn Correctional Center near Smyrna, Delaware, is tangled, with numerous additions and dismissals of claims and defendants, assertions of documents' and filings' not getting to the other

1

party, and a change in the presiding judge. The claims remaining in this action stem from two distinct incidents: (1) a November 9, 2008, assault of Plaintiff by his cellmate, Curtis Raison; and (2) a September 17, 2009, incident, in which Plaintiff alleges that, because of a lawsuit Plaintiff had filed, Sergeant Thomas Boyce let inmate Adam Walls attack Plaintiff, after which attack Plaintiff's property was stolen from his cell. For the first incident, Plaintiff has sued Joseph Simon-the lieutenant in the building where the assault took place-for deliberate indifference (i.e., failure to protect).[1] For the second incident, Plaintiff has sued Thomas Boyce for deliberate indifference and retaliation. Defendants have moved for summary judgment on all counts.

## A. The Raison Incident

According to Plaintiff's second amended complaint,[2] on November 9, 2008, Plaintiff was housed in Building 22, C-U-3, with cellmate Curtis Raison. (D.I. 51-1, at 1.) Raison began to "verbally abuse[]" Plaintiff, saying, "Fuck you; White mother

---

[1] To the extent that Plaintiff seeks to press a retaliation claim against Defendant Simon, (see Pl.'s Resp. 4-5, 17), such a claim is foreclosed by this Court's Memorandum and Order of March 30, 2010 (D.I. 110).

[2] Although the Court must consider the admissible evidence, not the bare allegations of a complaint, in evaluating a motion for summary judgment, see generally Fed. R. Civ. P. 56(c), the Court finds that relaying the allegations from Plaintiff's amended complaints best provides the background to the issues raised in the pending Motion. The Court parses the evidence itself in the Discussion section, infra.

fucker . . . ." (Id.) Raison then "threatened [Plaintiff,] saying 'When the guards leave the tier I'm going to kill you white mother fucker.'" (Id.) "A guard standing at the cell door, C.O. Gittens, heard [Raison], called for back up, Cpl. Gonzales, and they removed [Raison] from the cell." (Id.) "Ten or 15 minutes later Raison was returned to the cell." (Id.) "When the guards left[,] Raison assaulted [Plaintiff] for 10 to 15 minutes until someone got the guards [sic] attention." (Id.) Plaintiff further alleges,

> While I was being treated by medical I heard the guards talking about how Raison shouldn't have been put back in the cell with me because he has a history of mental illness and violence and he threatened to kill me, that it was the Lt's call (Lt. Simon) to put him back in the cell with me and that it had to do with my pending complaint.

(Id. at 1-2.)

On November 11, 2008, Plaintiff filed a grievance complaining that he was charged with the "sick call cost" stemming from the incident. (Grievance Report # 173968, Defs.' Mot. Ex. J, at A-80.) On October 5, 2009, Plaintiff filed his second amended complaint, claiming that, as a result of the November 9, 2008, incident, Defendant Simon is liable to Plaintiff for deliberate indifference.

3

### B. The Walls Incident

#### 1. The assault

According to Plaintiff's third amended complaint, Plaintiff was returning to his building from lunch on September 17, 2009, when he "was assaulted by an inmate . . . who was in the alcove waiting for [Plaintiff]." (D.I. 53, at 1.) The inmate, Adam Walls, allegedly "said[] that Sgt. Boyce left him in the alcove just for [Plaintiff]." (Id.) Once Walls "assaulted" Plaintiff, Plaintiff "knocked him out." (Id.) When Sergeant Boyce handcuffed Plaintiff, Plaintiff "told him what the inmate said" and "Sgt. Boyce said something along the lines of 'I did, I could have let him through 5 minutes ago but I timed chow so you two would be together so he would fuck you up snitch.'" (Id.)

On October 21, 2009, Plaintiff filed his third amended complaint, claiming that, as a result of this encounter, Defendant Boyce is liable to Plaintiff for deliberate indifference and retaliation.

#### 2. The stolen property

According to Plaintiff's third amended complaint, after he was handcuffed by Sergeant Boyce for having punched Walls, Plaintiff made a statement to Sergeant Boyce about securing Plaintiff's property, presumably because Plaintiff was not going to be returned to his cell. (D.I. 53, at 1-2.) "Sgt. Boyce

4

responded along the lines of 'Do you think I care about what happens to a snitch, I just tried to get you fucked up for filing civil suits against guards, snitch.'" (Id. at 2.) Plaintiff alleges that some of his property was subsequently stolen from his cell by Plaintiff's cellmate. (Id.)

On September 17, 2009, and again on October 14, 2009, Plaintiff filed a grievance complaining about his stolen property. (Grievance Report # 188214, Defs.' Mot. Ex. J, at A-81; Grievance Report # 189477, Defs.' Mot. Ex. J, at A-82.) On October 21, 2009, Plaintiff filed his third amended complaint, claiming that, as a result of this loss, Defendant Boyce is liable to Plaintiff for deliberate indifference and retaliation.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the evidence, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

### III. DISCUSSION

#### A. The Raison Incident

Among the arguments that Defendant Simon makes in support of the Motion for Summary Judgment is that Plaintiff did not properly exhaust his administrative remedies and thus could not bring this suit against Simon.

"Before filing suit, prisoners must exhaust their available administrative remedies." Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); see Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (2006) ("No action shall be brought with respect to prison conditions under section [1983] . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "[T]hose remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' Even when the prisoner seeks relief not available in

6

grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." Porter v. Nussle, 534 U.S. 516, 524 (2002) (citations omitted). Nonetheless, a "remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)." Mitchell, 318 F.3d at 529 (internal quotation marks omitted).

On its face, "Section 1997e(a) does not require a prisoner to name all responsible officials [in a grievance] in order to satisfy the exhaustion requirement." Short v. Ryan, No. 08-106, 2010 WL 3926202, at *7 (D. Del. Oct. 1, 2010). "As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA." Id. at *6 (quoting Jackson v. Ivans, 244 Fed. App'x 508, 513 (3d Cir. 2007)).

Nonetheless, the Supreme Court has held that the PLRA requires "proper exhaustion," that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006); see also Johnson v. Townsend, 314 Fed. App'x 436, 442 (3d Cir. 2008) (per curiam) ("While the Supreme Court has noted that 'nothing in the [PLRA] imposes a 'name all defendants' requirement,' it has also recognized that

7

'[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements and not the PLRA, that define the boundaries of proper exhaustion.'" (quoting Jones v. Bock, 549 U.S. 199, 217-18 (2007)); Smith v. Vidonish, 210 Fed. App'x 152, 156 (3d Cir. 2006) (per curiam) ("[T]he inmate must follow the procedural requirements of the prison grievance system. If the prisoner fails to follow the procedural requirements, then his claims are procedurally defaulted." (citation omitted)). The purposes of the exhaustion requirement are (1) to give prison officials notice and an opportunity to correct a problem before being haled into court, and (2) to reduce the quantity and improve the quality of inmate suits. Jones, 549 U.S. at 204; Woodford, 548 U.S. at 89.

"[E]xhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010); see also Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) ("The availability of additional remedies to a prisoner is a question of law."). When there is a factual dispute as to the administrative steps taken, however, courts within this Circuit have denied summary judgment and held an evidentiary hearing to resolve the dispute. As recently explained by the **McErlean v. Merline** court,

8

> According to the Court's research, the Fifth, Seventh,
> and Eleventh Circuits have held that district courts
> should resolve fact disputes about procedural
> exhaustion at a pre-trial evidentiary hearing. . . .
> Although the Third Circuit has not squarely addressed
> this issue, it has issued a precedential opinion in
> Drippe v. Tobelinski in which it signaled its
> agreement with the Seventh Circuit case Pavey v.
> Conley, 544 F.3d 739, 740 (7th Cir. 2008), that
> 'exhaustion of administrative remedies under the PLRA
> is a question of law to be determined by the judge.'
> Therefore, in an abundance of caution, the Court will
> conduct an evidentiary hearing to resolve all fact
> disputes necessary to determine whether Plaintiff
> exhausted the available administrative remedies.

No. 07-5681, 2010 U.S. Dist. LEXIS 128883, at *16-17 (D. N.J. Dec. 7, 2010) (citations omitted); see also Rosario v. Doe, No. 08-5185, 2010 U.S. Dist. LEXIS 135234, at *2 (D. N.J. Dec. 21, 2010); Murray v. Palmer, No. 03-1010, 2010 WL 1235591, at *1 (N.D.N.Y. Mar. 31, 2010).

The State of Delaware Bureau of Prisons Procedure Manual details a 3-step grievance procedure. An inmate with a grievance must initiate the grievance procedure by completing Form # 584 "within 7 calendar days following the incident and forward to the IGC" (Inmate Grievance Chair). (Procedure No. 4.4, Defs.' Reply Ex. U, at A-116.) The Manual does not state the specific content that should be provided in the grievance. (See id. at A-112 to A-118.) The Manual does, however, prohibit an inmate from

"submitting more than one grievance arising from a single incident." (Id. at A-114.)

Plaintiff filed grievance # 173968 on November 11, 2008, within the seven days required by Manual Procedure 4.4. (Grievance Report # 173968, Defs.' Mot. Ex. J., at A-80.) The Grievance Report provides the following complaint:

> On Sunday, November 11, 2008[3] I was housed in building 22, CU3 when my cellmate Curtis Raison, right after returning from lunch took an aggressive stance towards me, verbally abused me: fuck you, white mother fucker; fat mother fucker; fat white mother fucker; and threatened me saying 'When the guards leave the tier I'm going to kill you white mother fucker.' A guard standing at the cell door saw and heard him and removed him from the cell, he was put in the C-tier intervieew [sic] room for a while. He was then returned to the cell where he attempted to kill me the guards left [sic].

(Id.) Plaintiff's request for relief was as follows: "Under the above circumstances I don't think it's unreasonable to request minimally a squashing of sick call cost." (Id.)

This grievance certainly does not make any explicit reference to any failure to protect or deliberate indifference by prison officials; the concern is with the medical and/or financial aspects of the prison system. The grievance does not make any mention of any problem with the conduct of the

---

[3] The Grievance Report lists the incident date as November 11, 2008, though the other filings by the parties say that the incident occurred on November 9, 2008. This discrepancy does not make a difference here.

10

supervising lieutenant, Defendant Simon, either by name or by position. The only prison official mentioned in the grievance as having had anything to do with the incident is the guard who escorted Plaintiff's cellmate from the cell after a threat was made, and there is no indication in the grievance that this or any other official acted improperly. (Id.)

Contrary to Plaintiff's contention, (Pl.'s Resp. 9), this was not sufficient to put prison officials on notice of a problem with the decision to return Raison to his cell and give them an opportunity to correct it.[4] See Hedgespeth v. Hendricks, 340 Fed. App'x 767, 769-70 (3d Cir. 2009) (per curiam) (affirming the finding of failure to exhaust retaliation and due process claims when the grievances, which requested compensation and back pay for an improper detention, "neither included any facts relevant to [the plaintiff's] constitutional claims . . . nor named any of the individuals involved in the claims"), cert. denied, 130 S. Ct. 3418 (2010); Brownell v. Krom, 446 F.3d 305, 311 (2d Cir. 2006) (holding that a grievance for recovery of lost property was insufficient to exhaust a claim for intentional mishandling of property in retaliation for protected conduct); Short, 2010 WL 3926202, at *7 (holding that the plaintiff did not exhaust her

---

[4] Plaintiff bases his legal argument on decisions from other circuits, none of which are binding on this Court.

discrimination claim when her grievance complained of her maximum-security classification but at no point complained that the classification was due to sexual-orientation or race discrimination). Thus, Grievance # 173968 did not suffice to exhaust Plaintiff's administrative remedies.

This finding does not end the inquiry, however, for Plaintiff provides evidence that he filed another grievance, one providing the basis for the deliberate indifference claim against Simon and in accordance with the Department of Correction time requirements, that was never acknowledged by prison officials. Plaintiff testified at his deposition that he found a rough draft of the more detailed grievance when going through his paperwork in the spring of 2010 and "know[s] that [he] filed final drafts of them, but they was never acknowledged." (Defs.' Mot. Ex. I, Pl.'s Dep., 108:2-8; Defs.' Mot. Ex. K, at A-85.) Plaintiff testified that he filed the grievance "[w]ithin the time frame for filing them, within a week." (Defs.' Mot. Ex. I, Pl.'s Dep., 108:12-15.) On the other hand, Corporal Matthew Dutton, a member of the inmate grievance committee, swore that the "handwritten and undated documents that Inmate John E. Miller alleges were grievances the JTVCC ignored" were not in the Department of Correction computer database and were "not filed with the board." (Defs.' Mot. Ex. H, Dutton Aff., at A-42 to A-43.) Corporal

12

Dutton explained that "[h]ad these two alleged grievances actually been filed with the grievance board, they would have been entered into the DACS system, printed out, and a copy would have been provided to Inmate Miller." (Id. at A-43.) Plaintiff then submitted an affidavit signed under oath, swearing that the more detailed grievance was filed "in the correct amount of time" and that the produced draft was a "true and correct copy[] of the grievance[]." (Pl.'s Resp. Ex. 1, Pl.'s Aff., at 1). Plaintiff further swore that, although he did not get a print-out or other response, he "followed up and was misled by being told the grievance board was backed-up and that [he] would hear something." (Id.)

While from the record before this Court it might appear doubtful that Plaintiff did file such a grievance, see Murray v. Palmer, No. 03-1010, 2010 WL 1235591, at *6 (N.D.N.Y. Mar. 31, 2010) (rejecting the plaintiff's "excuses" that he had handed the grievance and appeals to officials and that if they were not received it must have been because the letters were not properly delivered by them, because "the credible testimony before the Court indicates that Plaintiff did not hand his grievance and appeals to various corrections officers with regard to the claims in question"), there is enough evidence submitted by Plaintiff to create a genuine dispute of material fact and preclude summary

13

judgment. See Candido v. Hogsten, 315 Fed. App'x 405, 406-07 (3d Cir. 2009) (per curiam) (vacating summary judgment when the plaintiff's sworn statement asserted that officials never responded to his administrative complaint); Carston v. Sacks, 157 Fed. App'x 504, 505-06 (3d Cir. 2005) (per curiam) (vacating summary judgment when there was a factual dispute as to when the grievances were put in the prison box); Ray v. Kertes, 130 Fed. App'x 541, 543 (3d Cir. 2005) (per curiam) (holding that defendants did not prove failure to exhaust by submitting only a conclusory affidavit from a grievance official averring that she had searched the database and determined that the plaintiff had failed to exhaust); Alden v. Smith, No. 05-1735, 2007 WL 776868, at *6-7 (M.D. Pa. Mar. 12, 2007) (denying summary judgment when the plaintiff swore that he filed a grievance that went unacknowledged); cf. Carter v. Morrison, No. 06-3000, 2010 WL 701799, at *10 (E.D. Pa. Feb. 24, 2010) (holding that the plaintiff's lack of memory as to whether he filed administrative complaints did not relieve defendants of their burden to demonstrate failure to exhaust).

The Court thus denies the Motion at this time but will hold an evidentiary hearing to resolve the dispute over exhaustion.[5]

---

[5] If the Court concludes after the hearing that Plaintiff failed to exhaust this claim, summary judgment for Defendant Simon will be granted. If the Court concludes after the hearing that Plaintiff did exhaust, the Court will consider Defendant Simon's other grounds for summary judgment. See

14

**B. The Walls Incident**

Among the arguments that Defendant Boyce makes in support of the Motion for Summary Judgment is that Plaintiff did not properly exhaust his administrative remedies with respect to the Walls incident and thus could not bring this suit against Boyce.

Plaintiff filed a grievance arising out of the September 17, 2009, incident on September 24, 2009. (Grievance Report # 188214, Defs.' Mot. Ex. J, at A-81.) The Grievance Report complained that

> Ten days ago,[6] within minutes of having cuffs put on me, I spoke to Lt. Smith about securing my property. Specifically my stamps, in an envelope with my picture in a file marked defense, about $5.00 worth, with the exact amount written on the outside of the envelope. I got my legal work, in the file marked "Defense" was the envelope with my pictures in disarray but not any stamps. I have receipts for the stamps, the exact amount was: 13 44 cent, 8 17 cent, and 2 3 cent stamps. Total $7.41.

(Id.) As relief, Plaintiff stated, "I would like to be reimbursed for the property and something done to secure inmates

---

generally McErlean v. Merline, No. 07-5681, 2010 U.S. Dist. LEXIS 128883, at *18 (D. N.J. Dec. 7, 2010) ("Because judges are cautioned to decide only those issues they must decide, the Court declines at this juncture to opine on the alternative grounds for summary judgment raised by the . . . Defendants." (citation omitted)).

[6] Although the September 24, 2009, Grievance Report states that the incident occurred ten days earlier, which would be September 14, 2009, the other filings state that the incident occurred on September 17, 2009. We resolve this conflict in Plaintiff's favor, as a complaint filed ten days after the incident would be untimely.

15

[sic] property a little quicker or more securely." (Id.) On October 14, 2009, Plaintiff filed a second grievance relating to the incident, explaining that he had written "a premature grievance, grievance No. 188214 regarding my stamps when I knew they were gone but was told to wait for property." (Grievance Report # 189477, Defs.' Mot. Ex. J, at A-82.) The content of this second grievance again was limited to the loss of property:

> I received my property today and some of my paperwork was missing, some of my stamps were missing (surprisingly not all) and my headphones were missing. I believe my cellie stole the stamps and headphones due to staff not securing my property of [sic] the paper work is gone, due I believe to staff failure to step on the bunk ladder and look on the top shelf. . . . I have receipt for the stamps and property sheets show I owned the headphones for 13 years.

(Id.) As relief, Plaintiff stated, "I would like to be reimbursed for the missing stamps and headphones and a policy instituted enforced [sic] to secure property." (Id.)

These grievances clearly do not satisfy the exhaustion requirement for Plaintiff's deliberate indifference and retaliation claims against Defendant Boyce for the alleged assault by Walls. There is no mention of the events in the alcove, let alone of any interaction between Plaintiff and Walls

16

or between Plaintiff and Defendant Boyce. See Hedgespeth, 340 Fed. App'x at 769-70; Brownell, 446 F.3d at 311.[7]

Nonetheless, the inquiry does not end here, as Plaintiff asserts, as he did with the Simon claim, that he filed another grievance, one detailing the events in the alcove and in a timely manner, that was not acknowledged by prison officials. Plaintiff testified at his deposition that he "know[s] for an absolute certainty" that he filed the more detailed grievance. (Defs.' Mot. Ex. I, Pl.'s Dep., 108:2-8.) While first stating that he thought he filed the grievance within a week, he then admitted that "that one probably took longer, because I was in isolation. So I'm not sure, unless it's got the date on it, when I put it in. . . . Might have taken me longer than the actual week." (Id. at 110:19-111:5.) The more detailed draft produced was undated. (Defs.' Mot. Ex. K, at A-85.) Defendant Boyce, like Defendant Simon, relied on the affidavit of inmate grievance committee member Dutton, who swore that the "handwritten and undated documents that Inmate John E. Miller alleges were grievances the JTVCC ignored" were not in the Department of Correction computer

---

[7] While Plaintiff cites to a Southern District of New York case for the proposition that an investigation of a grievance that ultimately makes available the facts or details of another claim renders the other claim administratively exhausted, (Pl.'s Resp. 10-11), that decision is not binding on this Court and is by no means a universal rule. See, e.g., Burton v. Jones, 321 F.3d 569, 576 nn.4-5 (6th Cir. 2003) (finding failure to exhaust a retaliation claim when it was only raised at a later stage of the grievance procedure), overruled on other grounds, Jones v. Bock, 539 U.S. 199 (2007).

database and were "not filed with the board." (Defs.' Mot. Ex. H, Dutton Aff., at A-42 to A-43; see also id. at A-43 (explaining that "[h]ad these two alleged grievances actually been filed with the grievance board, they would have been entered into the DACS system, printed out, and a copy would have been provided to Inmate Miller").) Plaintiff thereafter submitted his affidavit stating that the more detailed grievance was filed "in the correct amount of time" and that the produced draft was a "true and correct copy[] of the grievance[]." (Pl.'s Resp. Ex. 1, Pl.'s Aff., at 1.) As with the Simon claim, Plaintiff swore that, although he did not get a print-out or other response, he "followed up and was misled by being told the grievance board was backed-up and that [he] would hear something." (Id.)

Although Plaintiff's differing statements may suggest that his recollection or recitation of the grievances as filed–and as timely filed–is incredible, see generally Murray, 2010 WL 1235591, at *6, the Court will hold an evidentiary hearing to evaluate the credibility of the parties and witnesses and resolve this factual dispute. See cases cited supra Section III.A. Thus, summary judgment for Defendant Boyce is denied at this time with regard to the deliberate indifference and retaliation claims stemming from the assault.

## **IV.  CONCLUSION**

For the foregoing reasons, the Court denies Defendants' Motion for Summary Judgment at this time, without prejudice to renewal after the evidentiary hearing on exhaustion.

```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE
```

JOHN E. MILLER,                  :
                                 :
            Plaintiff,           :    CIVIL ACTION
                                 :
      v.                         :    NO. 08-CV-271 (JCJ)
                                 :
COMM'R STANLEY TAYLOR,           :
et al.,                          :
                                 :
            Defendants.          :

## ORDER

AND NOW, this 15th day of March, 2011, upon consideration of Defendants' Motion for Summary Judgment (D.I. 120), Plaintiff's response in opposition thereto (D.I. 138), and Defendants' reply in further support thereof (D.I. 150), and for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the Motion is DENIED WITHOUT PREJUDICE pending an evidentiary hearing to resolve the dispute concerning exhaustion of administrative remedies.

                                      BY THE COURT:


                                      s/J. Curtis Joyner
                                      J. CURTIS JOYNER, J.